IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVE HICKLES,

          Plaintiff,

v.                                        Case No. 24-2252-JWB

FEDEX CORPORATION,[1]

          Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for summary judgment (Doc. 57); Plaintiff's motion for spoliation sanctions (Doc. 59); and Plaintiff's motion to strike or, in the alternative, for leave to file a limited surreply (Doc. 72). The motions are fully briefed and ripe for decision. (Docs. 57–61, 67, 70–71, and 73–74.) For the reasons stated herein, Defendant's motion for summary judgment is GRANTED; Plaintiff's motion for spoliation sanctions is DENIED; and Plaintiff's motion to strike or, in the alternative, for leave to file a limited surreply is DENIED.

**I.     Facts**

The facts set forth herein are material to the issues on summary judgment and are either uncontroverted or viewed in a light most favorable to Plaintiff as the nonmoving party.

According to his description of himself in the pretrial order, Steve Hickles ("Plaintiff" or "Hickles") "is over the age of 40, is black, and has Multiple Sclerosis." (Doc. 53 at 2.) Plaintiff

---

[1] As explained in Magistrate Judge Mitchell's order (Doc. 52), effective June 1, 2024, FedEx Ground Package System, Inc. was subsumed by merger with Federal Express Corporation. During the pretrial conference, the parties stipulated that FedEx Corporation is now the only properly named defendant for purposes of liability in the current matter. The clerk is directed to terminate FedEx Ground Package System, Inc. as a defendant.

began his employment with FedEx Corporation ("Defendant" or "FedEx") in 1998 as an operations manager at the FedEx facility in Lenexa, Kansas ("Lenexa Hub"). (*Id.* at 14:2-5.) Plaintiff was promoted to sort manager at the Lenexa Hub approximately six months into his employment. (*Id.* at 14:6-9.) In 2000, Plaintiff was transferred to the FedEx facility in Salina, Kansas ("Salina Hub") and was promoted to senior manager. (*Id.* at 14:10-20.)

In 2005, Plaintiff returned to the Lenexa Hub and shortly thereafter was promoted to the position of assistant senior manager, which he deemed a "lateral move" because of the relative size difference between the Lenexa Hub and the Salina Hub. (*Id.* at 14:20-15:3.) In that role, along with other duties, Plaintiff trained other hub managers in surrounding FedEx facilities. (Doc. 58 at 18.) Specifically, starting in 2019, Plaintiff was sent to the Dallas Hub every other week for months to help the facility get back on track in terms of meeting performance quotas. (*Id.*) During this time when training other hub managers, Plaintiff remained in the position of assistant hub manager at the Lenexa Hub.

From 2005 through the end of his employment with FedEx in September 2024, Plaintiff reported directly to Lenexa Hub Senior Manager Jeff Cairns. (Plaintiff's Depo., Doc. 58-2 at 41:18-42:3.) During Plaintiff's employment with FedEx, the management hierarchy was as follows: Plaintiff reported to Senior Manager Cairns; Cairns reported to Territory Manager Darin Schmanke (who was later replaced by Chris Stevenson); and Schmanke reported to District Managing Director Dan Huesman. (Pretrial Order Stipulations, Doc. 53 at 2.) As an assistant senior manager, Plaintiff oversaw the "Day" and twilight ("Twi") "sorts,"[2] which comprised

---

[2] The parties refer to the different work shifts at the Lenexa Hub as "sorts" within their briefs. (*See* Docs. 58, 70, 71.) This appears to be an industry term. Accordingly, this order will use the term "sorts" and "shifts" interchangeably when referring to the different work shifts—i.e., "Day" and "Twi."

approximately 70% of Lenexa Hub's daily volume.  (Doc. 58 at 5–6.)  At the time his employment ended in 2024, Plaintiff earned a salary of $141,488.  (*Id*.)

In 2003, Plaintiff was diagnosed with Multiple Sclerosis ("MS").  (Plaintiff's Depo., Doc. 58-2 at 87:6-12.)  Plaintiff's symptoms include weakness on his left side and getting tired easily. (*Id.* at 90:15-93:6.)  Plaintiff testified that "I can literally fall asleep sitting here talking" and "I start dragging my foot, I start getting clumsy with my hands."  (*Id.* at 92:13-93:6.)  Plaintiff first sought a work accommodation for this condition in August 2022, which is discussed in more detail below.  (Doc. 58 at 8.)

Between 2014 and 2022, Plaintiff applied for four senior manager positions at the Kansas City Station ("KCMO").  (Plaintiff's Depo., Doc. 58-2 at 27:15-29:12; Doc. 53 at 6.)  These jobs were awarded to the following individuals: in 2014 to Terry Koskovich, who is a white male; in 2018 to Andy Ash, who is a white male; in 2020 to Eric Atkinson, who is a black male; and in 2022 to Kodey Divers, who is a white male.  (Doc. 53 at 2–3.)  Plaintiff stated that Mr. Ash and Mr. Koskovich are "around five years younger" than Plaintiff and that Mr. Atkinson and Mr. Divers are "significantly younger" than Plaintiff; however, their actual ages are not in the record. (Docs. 53 at 5; 70-14 at 1.)  Plaintiff received lower interview scores than the successful candidates chosen for all four of these positions.  (Plaintiff's Depo., Doc. 58-2 at 31:6-14; *see also* Docs. 58-4 to 58-7.)  Plaintiff further testified that after not receiving these promotions, various members of district management offered him feedback and advice.  (Plaintiff's Depo., Doc. 58-2 at 37:2-40:8.) Plaintiff met with some managers, but he declined to meet with others because he "disagreed with [the advice given]."  (*Id.* at 39:13-40:2.)

Plaintiff's interview for the senior manager position in October 2022 was conducted by Territory Manager Chris Stevenson.  (*See* Doc. 58-7.)  Plaintiff obtained a 1.85 for his interview

score.  (*Id*.)  The other candidates and their respective scores were Kodey Divers (3.28) and Erika Vaiaoga (2.85).  (*Id.*)  The position was ultimately awarded to Divers.  (Pretrial Order Stipulations, Doc. 53 at 3.)  Huesman was district manager over this position at the time of hiring but did not directly take part in the hiring decision.  (Doc. 70 at 17.)

Following this interview, Plaintiff spoke with his supervisor, Jeff Cairns.  In relation to the 2022 position that Divers received, Plaintiff testified that Cairns told him that Plaintiff was older, on his way out, and that management was probably going to pass him over and go with a younger person.  (Plaintiff's Depo., Doc. 58-2 at 103:5-105:11.)  Cairns told Plaintiff that maybe Plaintiff— who was approximately 57 at the time of the interviews—was too old for his job.  (*Id*.)  However, Cairns did not participate in the interview nor was he a decisionmaker with regard to selecting who was to be promoted for the 2022 position and Plaintiff admits that he believed Cairns was "half joking, half serious."  (*Id*. at 103:22-23)

On August 4, 2022, shortly before Plaintiff interviewed for the 2022 senior manager position at KCMO, he asked FedEx for an accommodation for his MS that would allow him to leave work at 10:00 p.m. on nights when he was having a "flare-up" or was tired.  (*Id*. at 90:15-92:3; *see also* Doc. 58-20.)  Plaintiff testified that FedEx human resources ("HR") personnel met with him—specifically, Teri Walsh-Prondzinski—when he wanted to discuss this, and that HR did not give him a hard time about requesting an accommodation other than wanting certainty. (Plaintiff's Depo., Doc. 58-2 at 91:18-92:7, 93:7-94:4.)  In other words, the original doctor's note to support Plaintiff's accommodation request allowed Plaintiff to leave work whenever he had a "flare-up" or was feeling tired.  (*Id*.)  Plaintiff told HR that he did not need to leave at 10:00 p.m. every day, just on the days when he had flare-ups.  (*Id*.)  However, HR did not like the subjective nature of this accommodation request because they wanted predictability for scheduling purposes

and asked that Plaintiff obtain a more "clear-cut" answer from his doctor in terms of his work restrictions. (*Id*.) Plaintiff did so, and his doctor recommended that he be allowed to leave work every day at 10:00 p.m.—two hours before the usual end of the twilight shift. (*Id*.) As part of the interactive process instituted by FedEx in determining an accommodation that would best fit FedEx and Plaintiff, HR decided, in direct accordance with Plaintiff's doctor's recommendation, that Plaintiff would be allowed to leave at 10:00 p.m. every night. (*Id*. at 94:20-95:16.) FedEx's only stipulation, as stated on the accommodation itself, was that Plaintiff was to "maintain communication and planning within the Twi sort [and] complete the communication bridge/checklist before leaving by 10pm each evening." (Doc. 58-21 at 2.) His accommodation was formally approved on July 13, 2023. (*Id*.) Following the accommodation being granted, Cairns expressed reservations and concerns about Plaintiff's accommodation, because the 10:00 p.m. to midnight time period was often the busiest of the sort. (Cairns Depo., Doc. 70-6 at 28.) According to Cairns, his reservations were confirmed as Plaintiff's performance lowered during his June 1, 2022-March 31, 2023, review period, which was the first review to include time when Plaintiff was working with his accommodation. (*Id*. at 33–36; Doc. 70 at 4.)

Shortly before Plaintiff's accommodation request was approved, but after Plaintiff had first requested an accommodation, Plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 15, 2023. (Doc. 58-8.) The charge of discrimination primarily alleged discrimination due to Plaintiff being passed over for promotion on multiple occasions. (*Id*.)

After receiving his accommodation, Plaintiff believed it was not fair to still be held accountable for the period of his sort from 10:00 p.m. until midnight, in accordance with the approved accommodation, because he was not there and therefore "had no control" over the shift.

(Plaintiff's Depo., Doc. 58-2 at 95:16-96:1, 189:13-191:11.)  However, Plaintiff admits to taking steps such as printing sheets, going over volume, and other pre-planning measures prior to leaving at 10:00 p.m. in order to prepare those on the shift for his scheduled absence.  (Doc. 70 at 10.) Plaintiff's preparation is further established based on the testimony of a sort manager working directly subordinate to Plaintiff.  Specifically, Hassina Takilt stated that there was never a time where someone "ha[d] no idea what's going on" during the twilight shift after 10:00 p.m., because Plaintiff always communicated the "plan and g[ave] his sort managers what [was needed] for them to do the sort." (Doc. 70-4 at 19–21.)

Not long after his accommodation request had been approved, Plaintiff took Family and Medical Leave Act ("FMLA") medical leave for the full twelve weeks[3] from September 14, 2023, to December 10, 2023, for a heart procedure.  (*Id*. at 40:15-41:2; Doc. 53 at 3.)  Plaintiff had no difficulty with FedEx management regarding this request for medical leave.  (Plaintiff's Depo., Doc. 58-2 at 41:6-15.)

Later, Plaintiff "think[s]" he told Cairns that he was filing a lawsuit against Defendant based on his failure to be promoted.  (*Id*. at 179:18-180:2.)  After this discussion, Cairns started treating him differently, notably by taking away Plaintiff's ability to hire his own sort managers. (*Id*.)  Previously, Plaintiff was always able to hire his own sort managers and Doug Goodwin, the other assistant hub manager at the Lenexa Hub, was still allowed to hire his sort managers after this authority was taken away from Plaintiff.  (*Id*. at 47:10-49:3.)  Cairns admitted that he was subjecting Plaintiff to more scrutiny around this time but stated that it coincided with Plaintiff being placed on a Performance Improvement Plan ("PIP") and that subjecting employees to increased scrutiny while on a PIP was common practice.  (Cairns' Depo., Doc. 70-6 at 15–16.)

---

[3] Under the FMLA, eligible employees are entitled to take twelve weeks of leave per year.  *See* 29 U.S.C. § 2612(a)(1). Here, the parties have stipulated that Plaintiff would be considered an eligible employee under the law.

In the first week of May 2024, Cairns notified Plaintiff that he was going to be formally placed on a PIP (which actually occurred in July). (Docs. 53 at 3; 58-3.) The PIP indicated that Plaintiff was placed on the plan because both the day and twilight shift for which he was responsible had "failed multiple times" in areas such as productivity, completion rates, and package handling standards, and Plaintiff had failed to conduct certain meetings and otherwise take steps that could have ensured the shift's smooth running when he left at 10:00 p.m. (Doc. 58-3 at 3.) When Plaintiff learned that he was being placed on a PIP, Plaintiff submitted an internal complaint of retaliation to HR because he felt he was not being held to the same standard by Cairns as compared to his peer: Assistant Manager Doug Goodwin. (Doc. 58-16 at 2–3.) Specifically, Plaintiff questioned why he was being placed on a PIP for not hitting productivity numbers while Goodwin was not hitting productivity numbers and was not placed on a PIP. (*Id*. at 3.) Cairns admitted that Goodwin was not hitting certain productivity numbers but stated that Goodwin was not placed on a PIP because, unlike Plaintiff, he was at least working on the issues. (Cairns Depo., Doc. 70-6 at 44–45.) During the ensuing investigation into Plaintiff's internal complaint, the investigating official concluded that Plaintiff's claims of retaliation were "[u]nsubstantiated" because Cairns' difference in treatment between Plaintiff and Goodwin was based on their job performance and that Goodwin lacked any negative performance or conduct documentation. (Doc. 58-16 at 11–12.)

On July 8, 2024, Plaintiff was formally placed on a PIP due to deficiency in his performance metrics, which ended on September 5, 2024 (a duration of 60 days). (Doc. 53 at 3; *see* Doc. 58-3.) The PIP identified specific performance goals that Plaintiff needed to meet, including productivity targets, on-time completion rates, package handling standards, and safety meetings, among others. (Doc. 58-3.) The PIP also required weekly updates from Plaintiff,

generally in the form of PowerPoints, to assist Cairns in tracking Plaintiff's progress to ensure he met these metrics.  (*Id.*)  Territory Manager Chris Stevenson, to whom Cairns reported, testified that he informed Plaintiff that he could be terminated if he did not satisfactorily accomplish the performance metrics laid out in the PIP.  (Doc. 70-11 at 14.)

Ultimately, Plaintiff did not meet some of the performance metrics outlined in the PIP. (Doc. 58-3.)  Plaintiff does not dispute the accuracy or legitimacy of the numerical data or metrics stored on the FedEx "dashboard" which was the platform used to measure and track these performance metrics while Plaintiff was on a PIP.  (Plaintiff's Depo., Doc 58-2 at 78:2–79:4.) However, Plaintiff appears to dispute how some of these metrics were calculated.  Specifically, Plaintiff alleges that the performance metrics were calculated as individual numbers as opposed to combining all the metrics and getting an average, and that "[Plaintiff] hit the numbers when combined" but not individually.  (*Id.*; *see* Doc. 70 at 1.)[4]

On June 13, 2024, Plaintiff filed the instant lawsuit.  (Doc. 1.)  On August 19, 2024, Plaintiff filed an amended charge of discrimination with the EEOC.  (Doc. 58-9.)  On September 27, 2024, Plaintiff filed a second amended charge of discrimination with the EEOC.  (Doc. 58-10.)

At the end of Plaintiff's PIP in September of 2024, FedEx terminated his employment. (Doc. 53 at 5.)  Cairns made the decision to fire Plaintiff because after the PIP had ended, there were still areas in which Plaintiff had not reached the performance metric thresholds identified in the PIP and Cairns believed Plaintiff was not exhibiting behavior indicative of someone seeking to improve his work performance.  (Cairns Depo., Doc. 70-6 at 14.)  Territory Manager Chris

---

[4] Plaintiff has not clearly identified what numbers should have been combined.  In reviewing the PIP (Doc. 58-3) it is not clear to the court what, if any, numbers should have been combined.  However, even if a single metric, among many, should have been combined and was not, Plaintiff appears to have still fallen short of multiple predetermined performance metrics identified in the PIP.  Therefore, Plaintiff controverting this fact has no impact on the court's decision.

Stevenson stated the decision to terminate Plaintiff was within Cairns' discretion.  (Doc. 70-11 at 14.)

On November 15, 2024, Plaintiff filed his first amended complaint in the instant lawsuit alleging claims of race discrimination ("Count I") and retaliation ("Count II") in violation of Title VII; disability discrimination and denial of reasonable accommodations ("Count III") and retaliation ("Count IV") in violation of the ADA; age discrimination ("Count V") and retaliation ("Count VI") in violation of the ADEA; interference in violation of the FMLA ("Count VII"); and discrimination ("Count VIII") and retaliation ("Count IX") in violation of § 1981.  (Doc. 53 at 9–11.)  On August 12, 2025, Defendant moved for summary judgment on all claims.  (Doc. 57.)

## II.    Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020).  Conclusory allegations are not sufficient to create a dispute as to an issue of material fact.  *See Hall v. Bellmon*, 935 F.2d 935 F.2d 1106, 1110 (10th Cir. 1991).  The court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

In considering a motion for summary judgment, the facts set forth in the motion must refer "with particularity to those portions of the record upon which" the moving party relies. D. Kan. R. 56.1(a). "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Id*. To properly dispute a proposed statement of material fact, the opposing party must "refer with particularity to those portions of the record upon which the opposing party relies." D. Kan. R. 56.1(b)(1). Failure to properly controvert a proposed fact that is properly supported will result in a determination that the fact is admitted. *Coleman v. Blue Cross Blue Shield of Kansas, Inc*., 287 F. App'x 631, 635 (10th Cir. 2008) (finding that the "district court was correct to admit all facts asserted in [the movants] summary judgment motion that are not controverted by a readily identifiable portion of the record.") (internal quotation and citation omitted).

## III.    Analysis

### A.  Plaintiff's Motion to Strike or File Surreply

Plaintiff seeks to strike Defendant's reply brief (Doc. 71) or, in the alternative, file a surreply. (Doc. 72.) This motion has been fully briefed (Doc. 73, 74) and is denied for the following reasons.

Surreplies are not typically permitted and are only allowed in rare circumstances, including where the movant raises a new argument in a reply brief. *See Dodson Int'l Parts, Inc. v. Williams Int'l Co., LLC*, 2020 WL 4904049, at *1 (D. Kan. Aug. 20, 2020), *aff'd*, 12 F.4th 1212 (10th Cir. 2021). Plaintiff contends that leave should be granted because Defendant has "accused Plaintiff (and, by extension, counsel for Plaintiff)" of lying to this court, by pointing out instances where the Defendant, in its response (Doc. 71) accuses Plaintiff of making "a gross misrepresentation" or "categorically false statements of fact" to this court. (Doc. 72.) Notably, "Plaintiff

acknowledges that Defendant's Reply does not include any 'new material.'" (*Id.*) Accordingly, the reasons stated by Plaintiff are not sufficient for the court to permit a surreply. Therefore, Plaintiff's motion to strike and motion for leave to file a surreply are denied.[5]

### B. Spoliation Sanctions

Plaintiff seeks sanctions against Defendant for spoliation of evidence. (Doc. 59.) The motion has been fully briefed (Docs. 60, 61, 67) and is denied for the following reasons.

Defendant had a policy that all hub managers were issued work phones and laptops to use as part of their jobs. (Doc. 70-3 at 14–15.) Plaintiff was terminated on September 11, 2024, and when this occurred, he turned over his phone and laptop to Cairns per Defendant's policy. (Doc. 59 at 1.) According to Plaintiff, the phone contained extensive conversations between himself and Cairns. (*Id.*) Because Plaintiff's phone had a litigation hold, it was shipped to Coraopolis, Pennsylvania, and then purportedly was to be forwarded to Defendant's IT asset disposal department in Memphis, Tennessee. (Docs. 61 at 2; 61-3 at 3.)[6] However, Plaintiff's phone never made it to Memphis. (Doc. 61 at 3.) To date, Defendant has been unable to locate the phone and has no records of shipping it to Memphis. (Doc. 61-3 at 3.) This problem is compounded because Cairns failed to retain all but a short series of text messages between himself and Plaintiff. (Doc. 61-5 at 2–3; *see also* Doc. 61-8.) Cairns admits to deleting not only his text messages with Plaintiff

---

[5] The court notes that its decision on Defendant's summary judgment motion (Doc. 57) would not be changed even if the court considered the proposed surreply (Doc. 72-1). Further, the court recognizes Plaintiff's counsel's concern regarding Defendant's choice of words—*i.e.*, Defendant accuses Plaintiff of making "a gross misrepresentation" and "categorically false statements of fact" to this court—suggests that Plaintiff's counsel violated her ethical obligations of candor to the court under KRPC 3.3(a) and Fed R. Civ. P. 11(b)). However, under the circumstances the court does not view these statements by Defendant to imply any breach of ethical duty to the court.

[6] Defendant has provided an affidavit of Randy Rogers, a FedEx IT Manager in Coraopolis, PA. (Doc. 61-3.) Rogers testified that their procedure is to immediately ship cell phones to Memphis, Tennessee, as they purportedly did with Plaintiff's phone and that they do not have records because "[Rogers'] team only retains records for devices they are responsible for supporting and processing." (*Id.* at 3.)

but all of his text messages because he "do[es]n't keep text messages" and "do[es]n't like clutter." (Doc. 61-5 at 2–3.)

As to the deleted text messages, Plaintiff asserts that they contained relevant evidence and that Defendant's agent, Cairns, deleted them despite knowing of pending litigation. (Docs. 60 at 1–2; 67 at 1.) Plaintiff points to Cairns' admission that he knew Plaintiff had filed an EEOC charge when he deleted his text messages because Plaintiff had told him. (Docs. 67 at 2; 61-5 at 2.) However, Defendant contends this was not the reason for Cairns deleting his text messages, and rather, it is something he has always done to avoid clutter because of the high number of work messages he receives. (Doc. 67 at 2.) Plaintiff asserts that this admission by Cairns establishes the elements needed to prove spoliation. Further, Plaintiff asserts unreasonableness on Defendant's part because it failed to take proper steps to preserve the ESI. (Doc. 67 at 3.) Specifically, Plaintiff points to Cairns' admission that he was never informed "not to delete the text messages he receives every day from the Plaintiff." (Doc. 67 at 3 (citing Cairns' Depo., Doc. 61-5 at 2).) As to the loss of Plaintiff's work phone, Plaintiff asserts that Defendant has failed to maintain adequate shipping records. (Doc. 59 at 1-2; *see also* Doc. 61-3.)

Plaintiff argues he is prejudiced because he is unable to use the text messages to support his claims and to prove Cairns' version of events untruthful. (Doc. 60 at 8.) As such, Plaintiff requests that this court find Defendant improperly destroyed evidence and grant an adverse inference, which proports to state that:

> [T]he destroyed documents would have shown that the failure of Plaintiff's managers after Plaintiff left for his [10:00 p.m. to midnight] accommodation was not due to the fault of Plaintiff [, and thus] Plaintiff did not have poor planning and preparation, ineffective communication, and insufficient training of his managers and would have shown the opposite.

(*Id*. at 2-3; Doc. 67 at 7.)  Presumably, the inference sought by Plaintiff is that he did properly prepare his managers to handle the twilight shift after he left at 10:00 p.m. pursuant to his approved accommodation.  Plaintiff requests this adverse inference be applied by this court in assessing summary judgment. (Doc. 60 at 11.)  Accordingly, the court addresses this issue before proceeding to summary judgment analysis.

Defendant contends that Cairns' deletion of text messages was not spoliation but rather part of his regular habit of deleting messages to avoid clutter.  (Doc. 61 at 4–6.)  Regarding the lost phone, Defendant asserts that it followed proper procedures.  (*Id*. at 2–3, 6–7.)  Ultimately, Defendant admits they no longer have Plaintiff's work phone in their possession nor any records showing it was shipped from Coraopolis to Memphis.  Nevertheless, Defendant asserts that Plaintiff has not established that he was prejudiced and, even if Plaintiff proves the elements for sanctions, Defendant did not act in bad faith thereby disallowing an adverse inference.  (Doc. 61 at 6–7, 12.)

"Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."  *Equal Emp. Opportunity Comm'n v. JetStream Ground Servs., Inc*., 878 F.3d 960, 964 (10th Cir. 2017) (internal quotation marks omitted)).  The court has the authority to impose an adverse inference, a powerful sanction, "only upon finding that the party acted with the intent to deprive another party of the [electronically stored information's (ESI)] use in the litigation."  Fed. R. Civ. P. 37(e); *Henning v. Union Pac. RR. Co*., 530 F.3d 1206, 1219–20 (10th Cir. 2008) ("An adverse inference is a powerful sanction as it brands one party as a bad actor and necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information."); *Ad Astra*

*Recovery Servs., Inc. v. Heath*, 2020 WL 969762, at *7 (D. Kan. Feb. 28, 2020) ("Where a moving party seeks an adverse-inference jury instruction, it must also prove that the responsible party acted in bad faith.").

Here, the parties do not contest that Defendant had a duty to preserve evidence and thus the first element is satisfied.  As to prejudice, "[s]poliation of evidence causes prejudice when, as a result of the spoliation, the party claiming spoliation cannot present evidence essential to the underlying claim."  *CCA Recordings 2255 Litig. v. United States*, 2021 WL 2212758, at *6 (D. Kan. June 1, 2021) (internal quotations and citations omitted).  Plaintiff claims the deleted text messages from Cairns' phone would have proven he properly communicated with and prepared his managers for the portion of the twilight shift he was gone, pursuant to his accommodation.  Yet Plaintiff has provided testimony from his managers during the relevant period that stated Plaintiff *had* communicated with and prepared them.  (Doc. 70 at 10–12.)  Specifically, Hassina Takilt, a sort manager working under Plaintiff, stated there was never a time where someone "ha[d] no idea what's going on" during the twilight shift after 10:00 p.m., because Plaintiff always communicated the "plan and g[ave] his sort managers what [was needed] for them to do the sort."  (Doc. 70-4 at 19–21.)  While the court does not condone Cairns' problematic deletion of text messages after learning of the EEOC charge, Plaintiff has presented admissible evidence that shows the court exactly what Plaintiff alleges would have been included in those text messages.  Thus, the evidence Plaintiff alleges to be on the deleted texts would be cumulative.  *See*, *e.g.*, *Sky Jet M.G. Inc. v. VSE Aviation Servs., LLC*, 2025 WL 1664002, at *6 (D. Kan. June 12, 2025) (stating evidence that is "cumulative of other evidence that is available . . . [is] not prejudicial"); *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1150 (10th Cir. 2009) (finding no prejudice when plaintiff had access to discovery covering the same information likely contained in lost evidence); *Burlington N. & Santa*

14

*Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (finding no prejudice where lost evidence was produced in another form).

While the court has not found Plaintiff to have sufficiently shown prejudice, even if it had, Plaintiff's motion seeking an adverse inference would be denied because he has not proven bad faith as required by Rule 37(e)(2) of the Federal Rules of Civil Procedure.

"If an aggrieved party seeks an adverse inference jury instruction" as Plaintiff does here, "that party must also prove bad faith on the part of the producing party." *Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2013 WL 4028758, at *2 (D. Kan. Aug. 7, 2013). "'Negligent or even grossly negligent behavior' does not suffice." *CCA Recordings*, 2021 WL 2212758, at *6 (quoting Fed. R. Civ. P. 37(e)(2) advisory committee's note). "[I]t is [Plaintiff's] burden to show that [Defendant] acted in bad faith." *Ad Astra*, 2020 WL 969762 at *7. Here, Plaintiff asserts bad faith is demonstrated by Defendant's failure to preserve the texts after being told by Plaintiff that he had filed an EEOC complaint and because Defendant has failed to provide any shipping records for Plaintiff's lost work phone. (Doc. 60 at 5–6, 8–10.)

Defendant argues that there was no bad faith because the phone and laptop were promptly mailed to FedEx's Coraopolis, Pennsylvania, location for processing, in compliance with their internal procedure, and that the phone was lost somewhere in transit after being sent from Coraopolis to Memphis. (Docs. 61 at 8; 61-3 at 3.) As for Cairns' deleted texts, Defendant argues that it was just part of his habit based on the number of work texts he got every day. (Doc. 61 at 4–6.) Cairns even admits to knowing that Plaintiff had filed his EEOC charge before deleting the texts. (*Id*. at 5–6.) Plaintiff states that because the phone was lost in transit and Cairns compulsively deletes his texts, the only "reasonable inference" is that Defendant's conduct was "intentional" and "willful." (Doc. 60.) The court disagrees. Such an argument essentially renders

the "bad faith requirement superfluous because spoliation would always also result in a finding of bad faith," by assuming a guilty conscience simply because evidence no longer exists and not distinguishing negligent from intentional acts. *Ad Astra*, 2020 WL 969762 at *7. Accordingly, Plaintiff has not presented a record from which this court could find Defendant failed to preserve the work phone in order to deprive Plaintiff of evidence rather than because Defendant was sloppy or incompetent in carrying out routine processing procedures. *See Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 863 (10th Cir. 2005) (differentiating between ignorance or incompetence and "intentional acts").

While negligent and arguably careless, the court finds no indication under the facts presented of intentional conduct or bad faith on Defendant's part, or its agent, Cairns. Thus, the court declines to sanction Defendant.

### C. Statute of Limitations

At the outset, the court will first address the statute of limitations argument which is applicable to some claims or acts. (Doc. 58 at 5.) The ADA and Title VII require a claimant to file a discrimination charge with the EEOC within 300-calendar days from the date the alleged discrimination occurred. 42 U.S.C. § 12117(a); § 2000e–5; *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). If a claim is not filed within this time limit, the claim—on that specific act of discrimination—is time-barred. *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003).

Here, Defendant argues that to the extent Plaintiff's claims are predicated on acts taking place more than 300 days before Plaintiff filed his charge with the EEOC on May 15, 2023—that is, claims predicated on acts taking place prior to July 19, 2022—those claims are barred by the statute of limitations. (Doc. 58 at 5.) This would include: the 2001 bonus denial; Cairns becoming

Senior Manager at Lenexa in 2005; the 2007 Wick Hollingsworth position; conversations with Joel Blakely in 2016 and Jason Boss—two sort managers working under Plaintiff—about Huesman's statements; the 2014, 2018, and 2020 promotions awarded to Terry Koskovich, Andy Ash, and Eric Atkinson, respectively; the 2016 St. Paul position awarded to Matt Leonhart; the 2017 stock option bonus; and the 2019 Dallas assignment. (*Id*. at 7–10, 12–14, 17.) Defendant argues that specific acts of alleged discrimination are not actionable if time-barred even when they are related to acts alleged in timely filed charges. (Doc. 71 at 10–11.) As such, it appears that Defendant's argument is that acts taking place outside the statutorily permitted timeframe cannot be assessed by this court. That argument is overly simplistic.

In response, Plaintiff admits these prior acts occurred outside the statutory filing period and are thus not independently actionable. (Doc. 70 at 40.) However, Plaintiff contends that these prior acts are being introduced for a different (nonactionable) purpose: "background evidence supporting [Plaintiff's] timely claim." (*Id*.) And Plaintiff does have a timely claim. Specifically, Plaintiff's failure to promote claims stem from allegations that occurred in October of 2022— which is less than 300 days before Plaintiff filed his charge with the EEOC on May 15, 2023, and well within the applicable limitations period. (Docs. 18 at 11; 53 at 3; 58 at 5.)

The Tenth Circuit has made clear that while time-barred acts cannot independently support liability, they remain admissible to provide context and demonstrate a pattern of discrimination relevant to timely claims. *Sunderman v. Westar Energy, Inc*., 307 F. App'x 224, 229 (10th Cir. 2009) ("Title VII does not 'bar an employee from using . . . prior [time-barred discriminatory and retaliatory] acts as background evidence in support of a timely claim.'"); *Harris v. City of Kan. City, Kan. Fire. Dept. et al.*, 2021 WL 794900, at *5 (D. Kan. Mar. 2, 2021) ("[E]mployee[s are not barred] from using prior acts as background evidence in support of a timely claim."). Here, it

is clear to the court that Plaintiff intends to use these acts for that very purpose. (Doc. 70 at 40.) First, (1) Plaintiff refers to these prior acts in his "Factual Contentions" in the Pretrial Order (Doc. 53); (2) as "Background Information" in his Amended Charge of Discrimination (Doc. 18-3); and (3) the prior acts are not used to assert separate causes of action for retaliation or discrimination. (Doc. 18.)

Accordingly, this court will consider the factual instances that took place prior to July 19, 2022, only to the extent they are "alleged by [P]laintiff as background evidence when considering [P]laintiff's claim[s]." *Sunderman*, 307 F. App'x at 229.[7]  Defendant's motion for summary judgment as to Plaintiff's claims on the grounds they are barred by the statute of limitations is denied.

### D.  Title VII Race Discrimination (Count I)

Plaintiff's first claim is one of race discrimination under Title VII based on his being denied promotion to senior manager in 2022.[8]  (Doc. 18 at 15, 24.)  To succeed, Plaintiff "must prove that *intent* to discriminate *based upon* [the] plaintiff's protected class characteristics was the determining factor for the allegedly illegal employment decision." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1213 (10th Cir. 2022).  Plaintiff may either rely on direct evidence of "discrimination or use the three-step burden-shifting framework" identified in *McDonnell Douglas*

---

[7] While Plaintiff argues, and the court agrees, that factual instances taking place prior to July 19, 2022, are to be considered only to the extent they are admissible background evidence, Plaintiff's response brief appears to abandon nearly all arguments premised on those facts. (Doc. 70.) With the exception of the 2014, 2018, and 2020 promotions given to Terry Koskovich, Andy Ash, and Eric Atkinson, respectively, Plaintiff either fails to mention entirely or only mentions briefly in passing all of the other factual issues allegedly having taken place prior to July 19, 2022. (Doc. 70 at 16–17, 28–30.) And it is well established that "[i]ssues not raised in the opening brief are deemed abandoned or waived." *Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) (internal quotation marks omitted); *Phillips v. Calhoun*, 956 F.2d 949, 953–954 (10th Cir.1992) (a litigant who fails to press a point by supporting it with pertinent authority or by showing why it is sound despite a lack of authority forfeits the point). With regard to the 2014, 2018, and 2020 promotions, this background evidence will be addressed where relevant.

[8] Defendant generally refers to allegations of race discrimination contained in Plaintiff's first amended complaint (Doc. 18) and asserts that they fail to establish a basis for a Title VII or § 1981 claim. (Doc. 58 at 18–22.) At this stage of the proceeding, the pretrial order controls. D. Kan. R.  16.2(b). According to the pretrial order, Plaintiff's claim of race discrimination is based on a failure to promote under Title VII. (Doc. 53 at 9–10.)

*Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Here, Plaintiff is relying on the burden-shifting framework of *McDonnell Douglas* since he lacks any direct evidence of race discrimination.

Under that framework, Plaintiff must first establish a prima facie case of discrimination. The elements to establish a prima facie case under *McDonnell Douglas* "may vary depending on the context of the claim and the nature of the alleged conduct." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 n.1 (10th Cir. 2015). The preferred framework is a two-prong prima facie test, in which the evidence must demonstrate that: (1) Plaintiff suffered an adverse employment action and (2) the circumstances surrounding the adverse employment action give rise to an inference of discrimination on the basis of race. *See Ford*, 45 F.4th at 1215.[9] One way to satisfy this second element is to "show that the employer treated similarly situated employees differently." *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000). The burden then shifts to Defendant to proffer a "legitimate non-discriminatory purpose for the adverse employment action." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216–17 (10th Cir. 2013). If Defendant meets this burden, the burden then shifts back to Plaintiff to show his race "was a determinative factor in the [] employment decision, or show the [employer's] explanation for its action was merely pretext." *Id.* at 1217. Plaintiff identifies failure to promote as the adverse action he experienced. Plaintiff admits that his only timely failure to promote claim involves the 2022 KCMO Senior Manager position.[10] (Doc. 70 at 40.) Accordingly, the court will only address that promotion.

---

[9] Courts often include a third element: that the plaintiff belongs to a protected class. However, that element can be misleading. Title VII does not limit its protections to disfavored groups or classes of people. *See* 42 U.S.C. § 2000e-2(a). Rather, it prohibits certain categories of discrimination, such as discrimination on the basis of sex. *See id.*; *see, e.g., Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) ("Title VII's prohibition of discrimination 'because of . . . sex' protects men as well as women.").

[10] Although Title VII jurisprudence permits the introduction of unlawful but untimely "prior acts as background evidence in support of a timely claim," the background evidence is relevant where "the status of a current practice is at issue." *Morgan*, 536 U.S. at 113. The pretrial order indicates that Plaintiff is not alleging a "current practice." Quite the opposite—Plaintiff's theory is that he alone was singled out due to his immutable traits, his disability, and

Here, Defendant contends that Plaintiff has failed to meet his minimal burden of establishing a prima facie case because Defendant utilized an objective hiring procedure that provided "race-neutral data," and that Plaintiff was not promoted because he performed worse and/or was less qualified in the eyes of the decisionmakers than the other applicants. (Doc. 58 at 16–22.) In response, Plaintiff argues he has made a prima facie case that the 2022 failure to promote constitutes an actionable adverse employment action. (Doc. 70 at 28–29.) Plaintiff contends he provided evidence giving rise to an inference of race discrimination based on failure to promote based on his qualifications, namely: his lengthy performance record and reputation amongst his subordinates. (Doc. 58 at 2–3, 12, 15.) Plaintiff also points to Kodey Divers' (the individual chosen for the promotion in 2022) lack of experience compared to Plaintiff. (*Id*. at 17.) In reply, Defendant argues that Plaintiff has no admissible evidence that the decision of the interviewers was motivated by race or any other prohibited classification. (Doc. 71 at 7–8.)

Plaintiff's burden at the prima facie stage is he must show that he was rejected under circumstances that give rise to an inference of unlawful discrimination. Plaintiff's evidence does not meet that standard. Plaintiff sets forth no facts to suggest that anything about the interview process was tainted with discrimination.[11] Notably, Plaintiff does not put forth admissible

---

his age. Because the facts that he seeks to introduce are untimely, the "discriminatory act [that] is not made the basis for a timely charge" becomes "merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977); *see also Romero v. Altitude Sports & Ent., LLC*, No. 21-CV-00885-CMA-SKC, 2024 WL 989401, at *5 (D. Colo. Mar. 6, 2024). However, even if the court were to consider these prior promotions, Defendant provides a "legitimate non-discriminatory purpose" for promoting someone other than Plaintiff. Tabor, 703 F.3d at 1216–17.

[11] Plaintiff suggests that Dan Huesman, District Managing Director for FedEx, tainted the interview process by voicing his preference and remarking to other employees—such as Joel Blakely, Jason Boss, and Cairns—that Plaintiff ought not ever be promoted. (Doc. 70 at 3, 15, 17, 30, 41.) The evidence regarding these statements, however, is based on other employees' statements to Plaintiff that Plaintiff testified about during his deposition. Defendant argues these statements are inadmissible hearsay, and moreover, argues that even if these statements were made, they were not premised on Plaintiff's race. (Doc. 58 at 13, 23.) Plaintiff argues these statements are not hearsay, or alternatively, hearsay that falls under an exception. (Doc. 70 at 41.) Plaintiff is mistaken. This is classic hearsay, as Plaintiff is testifying to what other employees at FedEx told him about what Huesman in turn told them. Such statements are inadmissible and not sufficient to create a genuine issue of material fact to avoid summary judgment. *See Rice v. Wal-Mart Stores, Inc.*, 12 F. Supp. 2d 1207, 1212 (D. Kan. 1998); *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 485 (10th

evidence that the two interviewers—Territory Manager, Chris Stevenson and HR Manager, Maureen Mahr (Doc. 58-2 at 10)—ever made a discriminatory remark. (*See* Docs. 18, 70.)[12]

Assuming, without deciding, that Plaintiff satisfied his burden at the prima facie stage, Defendant has offered a non-discriminatory purpose for not promoting Plaintiff. That is, he was the lowest ranked applicant following the objective interview process—during which, each applicant was asked uniform questions across a broad range of criterium. (Docs. 58 at 18–19; *see* 58-7.) Specifically, Plaintiff received the lowest interview score (1.85) among all three candidates—Divers scored 3.28 and Erika Vaiaoga scored 2.85.

In response, Plaintiff contends there is substantial evidence showing pretext. (Doc. 70 at 30.) The court disagrees. Plaintiff argues that hiring decisions were not based solely on interview scores because "the highest scoring candidate did not always get the job." (Doc. 70 at 17, 30.) Such an argument is uncompelling because, as here, the highest scoring candidate did get the job. (Doc. 53 at 3.) Plaintiff also argues he was more qualified for the positions than those who received them, and, according to Plaintiff, both Cairns and Jason Boss thought Plaintiff was ready for promotion and deserved it. (Doc. 70 at 14, 30.) This argument is equally unpersuasive. Simply

---

Cir. 1995) ("[I]f [plaintiff] is testifying to what other employees told her about what [defendant's] agents in turn told them, then the testimony could constitute inadmissible hearsay."). Moreover, Plaintiff alleges that Huesman discriminated against another African American manager, Ron Watson. (Doc. 58 at 12.) But Watson's own affidavit denies this. (*See* Doc. 58-14.) However, the court must examine the record in the light most favorable to Plaintiff. Thus, even assuming for purposes of summary judgment that the statements in the evidence submitted by Plaintiff are admissible, they still fail to show how Defendant's failure to promote Plaintiff was in any way based upon his race. *See Thomas*, 48 F.3d at 485. Accordingly, the consideration of this evidence does not change the outcome on this motion.

[12] While not a model of clarity, to the extent Plaintiff seeks to support his prima facie race discrimination claim based on materially adverse actions outlined in the pretrial order (Doc. 53 at 10), other than the failure to promote claim, Plaintiff has abandoned those arguments for failure to respond to Defendant's arguments addressing them in its motion for summary judgment. *See McCants v. Correct Care Sols., LLC*, 2018 WL 2445157, at *5 (D. Kan. May 31, 2018) (citing *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768–69 (10th Cir. 2001)) ("[W]hen a party fails to respond to arguments made to support a motion for summary judgment, the party, in effect, abandons that claim."); *Bermudez v. City of Topeka, Kansas*, 2020 WL 206766, at *8 (D. Kan. 2020) ("[Plaintiff's] failure to respond to [Defendant's] arguments . . . suggests she has abandoned that claim and is grounds for summary judgment."). Even if those arguments were not abandoned for failure to respond, the court would otherwise conclude that Plaintiff has failed to provide facts by which a reasonably jury could infer that those actions could support a prima facie claim of race discrimination.

because individuals not responsible for the promotion at issue believed Plaintiff should have been promoted does not obligate Defendant to agree with those employees.

Despite this, Plaintiff urges the court to find that Defendant's actions in promoting Divers over Plaintiff in 2022 was discriminatory and that Defendant's reason was pretext because Plaintiff was more qualified. (Doc. 70 at 30.) A court's role "is to prevent intentional discriminatory hiring practices, not to act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments." *Hamilton v. Okla. City Univ.*, 563 F. App'x 597, 604 (10th Cir. 2014) (internal quotations omitted). Courts are to proceed with caution when considering the merits of candidates for employment. *Id.* at 602. A court can "draw an inference of pretext where the facts assure us that the plaintiff is better qualified than the other candidates for the position." *Id.* In other words, pretext may only be demonstrated by "overwhelming merit disparity." *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 865 (10th Cir. 2007) (internal quotations omitted).

Here, Plaintiff has not made an argument rising to the level of an overwhelming disparity between he and Divers. While Plaintiff points to the disparity of assistant manager experience between Kodey Divers (five months) and Plaintiff (17 years), Plaintiff admits that Divers had already been serving as a senior manager—a position Plaintiff did not currently hold—for two months immediately prior to him seeking the 2022 senior manager position. (Doc. 70 at 17.) This disparity in experience, however, was clearly considered by the interviewer, Chris Stevenson, as he wrote on Mr. Divers' evaluation form that his "[e]xperience [was] [l]imited." (Doc. 58-7 at 10.) And even if it were not, this is an example where courts are poorly positioned to be the "'super personnel department,' second guessing [Defendants'] honestly held (even if erroneous) business judgments." *Hamilton*, 563 F. App'x at 604 (citation omitted). Plaintiff has thus not shown pretext

based on Divers' qualifications.  *See Petersen v. Utah Dep't of Corr*., 301 F.3d 1182, 1190–91 (10th Cir. 2002) (finding no pretext when plaintiff's evaluation score ranked seventh among applicants).  To the extent Plaintiff disagrees with Defendant's assessment of his work history, his "subjective beliefs are not sufficient to show pretext."  *Strunk v. Airxcel, Inc*., 2022 WL 4447420, at *5 (D. Kan. Sept. 23, 2022); *Branson v. Price River Coal Co*., 853 F.2d 768, 772 (10th Cir. 1988) ("As courts are not free to second guess an employer's business judgment, this assertion [that Plaintiff was more qualified] is insufficient to permit a finding of pretext.").

Plaintiff also argues that Defendant treated him differently from "other similarly situated Caucasian employees" who were promoted over him.  (Doc. 18 at 16.)  In the context of pretext, differential treatment is when a plaintiff "demonstrates that the employer treated [the plaintiff] differently from other similarly-situated employees."  *Swackhammer v. Sprint/United Mgmt. Co*., 493 F.3d 1160, 1167–68 (10th Cir. 2007).  "[I]f the employer's differential treatment of similarly-situated employees is trivial or accidental or explained by a nondiscriminatory motive, such treatment is insufficient to create an inference of discrimination."  *Id*. at 1168 (internal quotations omitted).  Plaintiff states that Defendant subjected him to "different requirements for receiving a promotion," but fails to articulate record evidence of what those different requirements were.  (Doc. 18 at 16.)  What is undisputed is that the promotion process involved a panel ranking the applicants and only the top performing applicant was promoted.  (Doc. 58 at 18–22.)  Therefore, Plaintiff cannot show pretext through differential treatment in the 2022 promotion process.  *See Diskin v. Unified Sch. Dist. No. 464*, 1996 WL 717328, at *5 (D. Kan. Nov. 18, 1996) ("Plaintiff must show more than a dispute over qualifications to prove pretext") (internal quotations omitted).

Therefore, Defendant's motion for summary judgment on Plaintiff's race discrimination claim under Title VII (Counts I) is granted.[13]

## E.  Retaliation under Title VII, the ADA, and § 1981 (Counts II, IV, and IX)[14]

Next, Plaintiff alleges that Defendant retaliated against him for engaging in protected activity in violation of Title VII, the ADA, and § 1981.  (Doc. 18 at 17, 19.)  Lacking direct evidence of retaliation, Plaintiff must similarly establish these claims under the burden-shifting framework in *McDonnell Douglas*.  Under that framework, Plaintiff must first establish a prima facie case of retaliation by showing (1) that he engaged in protected opposition to discrimination, (2) "that a reasonable employee would have found the challenged action materially adverse," and (3) "that a causal connection exists between the protected activity and the materially adverse action."  *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016).  After establishing his prima facie case, the burden shifts to Defendant "to come forward with a legitimate, non-retaliatory rationale for the adverse employment action.  If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual."  *Id.*  Here, Defendant does not dispute that the first two elements are met.  (Doc. 58 at 28.)[15]  However, the parties dispute what actions were materially adverse.  Because it bears on the disputed element, the court addresses which actions Plaintiff has proven were materially adverse as that element has been interpreted by the courts.

---

[13] To the extent Plaintiff is stating a race discrimination claim under § 1981, it too would fail for the same reasons discussed herein.

[14] The pretrial order—which controls at this stage of the proceeding (D. Kan. R.  16.2(b))—mentions nearly identical facts in support of Plaintiff's Title VII, ADA, and § 1981 retaliation claims.  (Doc. 53 at 10–11.)  Accordingly, the court will discuss them together.  *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1258 (10th Cir. 2001) ("Both Title VII and § 1981 support a cause of action for retaliation and require a plaintiff to establish the same prima facie elements to recover."); *Winston v. Ross*, 725 F. App'x 659, 664 (10th Cir. 2018) (applying the same elements to ADA retaliation claim).

[15] It is not entirely clear what prong of the prima face case Defendant is challenging under Count IV.  However, Defendant does state: "[T]here is no evidence . . . showing that [Plaintiff] was subjected to any adverse employment actions *because of* [his MS condition]."  (Doc. 58 at 31.)  Based on this, the court reasonably interprets Defendant to be challenging the causation prong.  The court also finds this interpretation correct because Defendant has similarly challenged the causation prong on Plaintiff's retaliation claims brought under Title VII and § 1981, which both included identical allegations in the pretrial order.  (Doc. 53 at 10–11.)

Plaintiff points to being placed on the PIP and his eventual termination as materially adverse actions. (Doc. 70 at 31.) Defendant concedes these actions would be materially adverse. (Doc. 58 at 28.) However, Defendant argues the remaining acts that Plaintiff complains about are not. These actions include being required to fill out "end-of-day paperwork," attending additional meetings, Cairns no longer eating lunch with Plaintiff, Cairns hiring individuals to work under Plaintiff, Cairns not including Plaintiff in some "higher-level meetings," and HR not approving Plaintiff's request that his staff begin working five days as opposed to four. (*Id.*; Plaintiff's Depo., Doc. 58-2 at 179:18–180:2; Walsh-Prondzinski's Depo., Doc. 70-12 at 36:25–37:11.) Specifically, Defendant points out that while these activities may have affected Plaintiff's job performance, they did not constitute adverse actions because every manager in the building worked under the same conditions. (Doc. 71 at 7.) The court agrees with Defendant.

The actions pointed out by Plaintiff other than termination and placement on a PIP do not amount to materially adverse action that could support a prima facie case. *See Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 977–78 (10th Cir. 2025) ("'[P]etty slights, minor annoyances, and simple lack of good manners' are not materially adverse actions.") (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). While Plaintiff mentions that FedEx's own internal policies were violated when Cairns hired individuals under him, Defendant does not actually direct the court to such a policy. (Doc. 70 at 33.) Nevertheless, even assuming Defendant did violate an internal polcy by disallowing Plaintiff from hiring his own staff, Plaintiff fails to show how this act demonstrated illegal intent. *See Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 889 (10th Cir. 2018) ("[The] mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal intent"). Further, to the extent that Plaintiff's allegedly adverse actions include Defendant making

hiring decisions, such actions fall squarely within an organizations business judgement, which a court may rarely second guess. *Hamilton*, 563 F. App'x at 604 (citation omitted) (holding a court's role "is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments."). As such, the only actionable adverse employment actions taken against Plaintiff for purposes of establishing his prima facie case of retaliation are (1) being placed on the PIP and (2) termination.

Turning to the disputed final element, Plaintiff must show a causal connection between his protected activity and the materially adverse action. Although a retaliatory motive may be inferred when an adverse action closely follows protected activity, a long period of time will not suffice to show a causal connection. *See e.g., Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) ("If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection."). Looking closely at what courts have determined to be long versus short time periods, the "Tenth Circuit has held that a one and one-half month period . . . may, by itself, establish causation." *Fisher v. Basehor-Linwood Unified Sch. Dist. No. 458*, 460 F. Supp. 3d 1167, 1205–06 (D. Kan. 2020), *aff'd*, 851 F. App'x 828 (10th Cir. 2021). Whereas a three-month period has been found to be insufficient. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004).

Here, Plaintiff identifies two protected activities: (1) requesting an accommodation in August 2022 (which was formally approved on July 13, 2023) and (2) filing his EEOC charge of discrimination on May 15, 2023. (Docs. 58-20; 58-21; 58-8.) The materially adverse actions are being placed on a PIP in the first week of May 2024 (with formal placement occurring on July 8, 2024) and his termination which became effective on September 11, 2024. (Docs. 53 at 3; 58-3.)

Thus, the latest protected activity occurred on May 15, 2023, when Plaintiff filed his EEOC charge. The earliest allegedly retaliatory act—being informed he would be placed on a PIP—did

not occur until approximately twelve months later in early May 2024.  (Doc. 58 at 8.)  A gap of one year far exceeds the periods by which causation can be established by temporal proximity alone.  *See O'Neal*, 237 F.3d at 1253 (holding a three-month gap to be insufficient).

If there is not a "very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."  *O'Neal*, 237 F.3d at 1253.  The only evidence rationally attributable to retaliatory motive presented by Plaintiff is that Cairns made remarks expressing frustration at Plaintiff after filing a charge of discrimination—such as Plaintiff is "crying" and the statements in the charge are "lies."  (Doc. 70 at 31, 33 (citing Doc. 70-6 at 51).)  These comments amount to nothing more than isolated, ambiguous comments—thereby falling short of retaliatory motive.  Moreover, such isolated comments, combined with the elongated temporal proximity, do not suffice to establish causation. *See Trujillo v. Univ. of Colorado Health & Scis. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998) ("Federal law does not guarantee a utopian workplace, or even a pleasant one. . . . [P]ersonality conflicts between employees are not the business of the federal courts.") (internal quotes omitted). Nor do the substance of these comments allow for an inference that they were in any way motivated by retaliatory motive.  Accordingly, Plaintiff has failed to establish a prima facie case of retaliation.

Therefore, Defendant's motion for summary judgment on Plaintiff's retaliation claims under Title VII, the ADA, and § 1981 are granted.[16]

### F.  Disability Discrimination and Denial of Reasonable Accommodations (Count III)

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of

---

[16] Plaintiff's retaliation arguments under Title VII, the ADA, and § 1981 fail even if the court assumes he can establish a prima facie case and considers this evidence in the pretext analysis.  Defendant offered legitimate, non-discriminatory reasons for placing Plaintiff on the PIP and ultimately terminating him: Plaintiff's failure to meet critical performance metrics for which he was responsible.

employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  An employer can incur liability under the ADA for failing to reasonably accommodate an employee's disability.  *Id.* § 12112(b)(5)(A).  Plaintiff brings such a claim.  (Doc. 18 at 18.)

Under the ADA, the employee must request a "plausibly reasonable accommodation." *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020).  A failure to accommodate claim is evaluated under a modified *McDonnell Douglas* burden-shifting framework.  *Id.*  Under the first step, a plaintiff must demonstrate that (1) he is disabled; (2) he is otherwise qualified; (3) he requested a plausibly reasonable accommodation, and (4) the employer refused to accommodate his disability.  *Id.*  If the plaintiff makes a prima facie showing, the burden shifts to the defendant to present evidence "either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer."  *Id.* (internal citation omitted).  The Tenth Circuit has explained that if the employer shows either of the above, summary judgment is appropriate.  *Id.*  Defendant moves for summary judgment on the basis that following Plaintiff's request, he was granted a sufficiently reasonable accommodation—that is, Defendant rebuts the fourth prong.  (Doc. 58 at 31.)  The court finds that Defendant provided a reasonable accommodation.

Here, Plaintiff has MS and Defendant does not dispute that this is a qualifying disability within the meaning of the ADA.  (Doc. 58 at 29–31.)  Further, Defendant does not dispute that Plaintiff is a qualified individual in that he could perform the essential functions of his job with or without a reasonable accommodation.  (*Id.*)  As to the accommodation itself, Plaintiff originally requested it on August 4, 2022.  (Doc. 58-20.)  The original request shows that Plaintiff initially sought an accommodation that would allow him to leave at 10:00 p.m. only on nights when he

subjectively determined he needed to leave due to flare-ups with his MS. (*Id.*; Doc. 70 at 36.) While engaging in the interactive process, Plaintiff contends Defendant required him to seek a more restrictive accommodation, where he was required to leave at 10:00 p.m. every night, regardless of whether his MS flared up. (Doc. 70 at 36 (citing Plaintiff's Depo., Doc. 58-2 at 71).) This later accommodation was eventually granted on July 14, 2023. (Doc. 58-21.) Plaintiff argues that this alteration to his original request rendered the accommodation unreasonable because, as a result of his leaving at 10:00 p.m., the numbers on the twilight shift over which Plaintiff was responsible were negatively impacted, and Defendant ultimately held those shift performance metrics against Plaintiff when he was terminated. (Doc. 70 at 36.)

In response, Defendant argues that the accommodation granted was reasonable and that Plaintiff was explicitly informed he was responsible for preparing his crew for the remainder of the shift. (Doc. 71 at 9–10; *see also* Doc. 58-21.) Defendant states that as part of engaging in the interactive process, it was communicated to Plaintiff that to have predictability and certainty for scheduling and planning purposes, Defendant offered Plaintiff the accommodation of leaving at a set time each day (10:00 p.m.). (Doc. 71 at 9–10.) Defendant asked only that Plaintiff ensure that productivity on his sorts did not suffer by communicating to his crew his expectations prior to his departure each evening. (*Id.*; Doc. 58-21 at 2.)[17] Plaintiff did precisely that, according to the testimony of Hassina Takilt, a sort manager working directly subordinate to Plaintiff. (Doc. 70-4 at 19–21.) Takilt testified that there was never a time that the shift "ha[d] no idea what's going on" after 10:00 p.m., because Plaintiff communicated the "plan and g[ave] his sort managers what [was needed] for them to do the sort." (*Id.*) Ultimately, Defendant claims that the accommodation

---

[17] The accommodation granted by Defendant required that he "maintain communication and planning within the Twi sort, [and] complete the communication bridge/checklist before leaving by 10pm each evening." (Doc. 58-21 at 2.) Neither party has briefed what the communication checklist included.

it offered exceeded Plaintiff's original request because he could leave two hours earlier every night, as opposed to just those nights he felt that he needed too.

Plaintiff now contends there were alternative accommodations available, such as having Plaintiff's counterpart—presumably another assistant manager—come in a few hours early and take responsibility for the remainder of Plaintiff's shift after he left. (Doc. 70 at 36.) Specifically, Plaintiff argues that Defendant should have taken such steps after seeing Plaintiff's performance numbers were negatively affected after he worked his schedule under the accommodation. (*Id.*) As evidence of Defendant being on notice that Plaintiff's numbers were affected, Plaintiff points to an email sent from HR Manager Maureen Mahr to a Christene Kreyer[18] on September 5, 2023. (Doc. 70-15 at 1.) The email stated that Cairns and Stevenson had expressed concerns that Plaintiff's accommodation was not sustainable due to his sorts' recurring failures and wanted to explore other options. (*Id.*) Cairns also stated he believed Plaintiff's accommodation affected his ability to do his job. (Doc. 70 at 22 (citing Cairns' Depo., Doc. 70-6 at 26–27.)

The parties' dispute boils down to whether the accommodation Plaintiff requested was refused. The undisputed facts show that Defendant granted Plaintiff an alternative accommodation that was sufficiently reasonable, thereby not refusing to accommodate Plaintiff's disability.

First, just because Defendant did not grant Plaintiff's accommodation request exactly as asked for, does not render the granted accommodation unreasonable. "[T]he term 'reasonable accommodation' refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1205 (10th Cir. 2018). The ADA provides that a "reasonable accommodation" may include—

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

---

[18] Neither party states Ms. Kreyer's position at FedEx. It appears from the record that she is a case manager involved in Plaintiff's May 2024 HR complaint. (*See* Doc. 58-16 at 3.)

> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).  In other words, a reasonable accommodation need not be the exact accommodation requested by a disabled employee.  *See Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) ("[A]n employer is not required to always provide the employee with the best possible accommodations or in the specific manner the employee requested.") (citing 29 C.F.R. § 1630.2(p)(1)).  Further, an employer retains "broad discretion in determining which alternative accommodation should be provided."  *Id.* (citing 29 C.F.R. § 1630.9).

Here, the summary judgment evidence shows that the granted accommodation was reasonable.  Plaintiff originally sought permission to leave at 10:00 p.m. only when he determined his MS required it.  (Doc. 58-20; Doc. 70 at 36.)  Defendant granted an accommodation allowing Plaintiff to leave at 10:00 p.m. every night—an accommodation that expanded Plaintiff's request by guaranteeing early departure on every shift.  (Doc. 58-21.)  This sole modification was put in place so as to maintain predictability; that is rather than leaving early on an ad hoc basis, Plaintiff would consistently leave at 10:00 p.m. with the understanding that he would prepare his crew by communicating expectations before his departure.  (Doc. 71 at 9–10; Doc. 58-21.)

Courts have consistently held that an employee cannot maintain a failure to accommodate claim merely because he did not receive his preferred, subjective arrangement.  *See Christmon v. B&B Airparts, Inc.*, 735 Fed. App'x. 510, 514 (10th Cir. 2018) (stating an accommodation "may be reasonable even though it is not the one that the employee prefers."); *Norwood v. United Parcel Serv., Inc.*, 2021 WL 3022315, at *14 (D. Kan. July 16, 2021), *aff'd*, 57 F.4th 779 (10th Cir. 2023) (holding employee did not have the right "to [his] preferred accommodation") (internal quotations

omitted); *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("[A]ccommodation may be reasonable even though it is not the one that the employee prefers."); *Ross v. Colo. Dep't. of Transp.*, 2012 WL 5975086, at *9 (D. Colo. Nov. 14, 2012) (stating the employer's "duty was to offer a reasonable accommodation, not necessarily the accommodation plaintiff would have preferred").  Plaintiff may not have preferred the accommodation he was granted.  But that is not what the ADA requires. Only that the offered accommodation be reasonable.

Moreover, Defendant's reasoning for this modification is nothing more than a sound business reality that is part of the interactive process to reach a mutually suitable decision.  And courts "should not second guess the employer'[s] judgment when its description is job-related, uniformly enforced, and consistent with business necessity."  *Mason v. Avaya Commc'ns, Inc*., 357 F.3d 1114, 1119 (10th Cir. 2003).  Plaintiff has not shown that Defendant refused to accommodate his disability, rather Defendant has definitively shown that he was granted a "reasonable alternate accommodation."  *Ratliff v. AT&T Servs., Inc*., 2022 WL 579253, at *7 (D. Kan. Feb. 25, 2022); *Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117 F.3d 1278, 1285–86 (11th Cir. 1997) ("[T]he word 'reasonable' would be rendered superfluous in the ADA if employers were required in every instance to provide employees . . . every conceivable accommodation possible.").  Moreover, Plaintiff has never challenged the good faith interactive process between he and Defendant in coming to a mutually acceptable accommodation.  Thus, the court finds that no jury could plausibly find that Defendant refused to accommodate Plaintiff.

Next, as evidence of an unreasonable accommodation, Plaintiff points to an email in which members of management at FedEx expressed concerns about whether the accommodation was sustainable given performance issues.  (Doc. 70-15 at 1.)  The court disagrees.  The email, dated September 5, 2023, reflects management's concern about operational performance, not a

withdrawal or denial of the accommodation itself.  Here, the accommodation approval letter explicitly required Plaintiff to ensure productivity did not suffer after 10:00 p.m. by requiring that he communicate expectations to his shift prior to departure.  (Docs. 58-21; 71 at 9–10.)  And Plaintiff's request to be fully relieved of his managerial job responsibilities is not reasonable.  Therefore, the email communication expressing reservations about Plaintiff's job performance does not render the accommodation unreasonable.  *See Tate v. Farmland Indus., Inc*., 268 F.3d 989, 993 (10th Cir. 2001) ("Provided that any necessary job specification is job-related, uniformly-enforced, and consistent with business necessity, the employer has the right to establish what a job is and what is required to perform it"); *Punt v. Kelly Servs*., 862 F.3d 1040, 1051 (10th Cir. 2017) ("[A]n employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation") (internal quotations omitted).  Consistent with the principles articulated in these cases, it was well within FedEx's prerogative as the employer to evaluate operational needs, define the essential functions of Plaintiff's position, and select among effective accommodations.  And that is precisely what FedEx did, as it wanted predictability for scheduling purposes.  While this court may not fully understand every aspect of this business decision, it is a business judgment nonetheless, which courts are ill-equipped to second guess.  *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1177 (10th Cir. 1999) ("[T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide") (internal quotations omitted); *Lamm v. Devaughn James, LLC*, 2022 WL 353500, at *4 (10th Cir. Feb. 7, 2022) (unpublished) (holding that a request to work "half-days" on days the employee subjectively experienced anxiety was not a facially reasonable accommodation where it would excuse unpredictable attendance).

Finally, Plaintiff's argument that alternative accommodations—such as having another manager come in earlier or hiring different managers to work under Plaintiff—were available does not create a genuine issue of material fact. The ADA does not require an employer "to reallocate job duties in order to change the essential functions of a job." *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995). *See also Selenke*, 248 F.3d at 1261; *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 950 (8th Cir. 1999) ("[R]equiring [employer] to create a co-manager position is not a reasonable accommodation."). Moreover, the ADA does not require an employer to hire additional staff merely to accommodate an employee's requested accommodation. *Burnett v. W. Res., Inc.*, 929 F. Supp. 1349, 1359 (D. Kan. 1996) ("The ADA does not require an employer to create a position . . . in order to give an employee the best accommodation or the accommodation requested"); *Burnett v. Pizza Hut of Am., Inc.*, 92 F. Supp. 2d 1142, 1157 (D. Kan. 2000) ("[A]n employer [is not] required to hire a new employee to perform certain functions or duties of a disabled employee's job which the employee cannot perform by virtue of his or her disability.").

Plaintiff has failed to make a prima facie showing of his failure to accommodate claim as no reasonable jury could find that he was refused an accommodation. But even if he had, Defendant still would have prevailed at summary judgment because Plaintiff's briefing and record evidence fails to create a triable issue of pretext. Therefore, Defendant's motion for summary judgment on Plaintiff's failure to accommodate claim is granted.[19]

---

[19] Plaintiff's complaint is not a model of clarity as to precisely what types of ADA claims he is asserting. Further, it is unclear from both the pretrial order and the parties' briefings whether Plaintiff even brings a claim for disability discrimination under the ADA. (Docs. 53 at 10; 58 at 28–31; 70 at 31–33.) The court recognizes that a failure-to-accommodate claim and a disability discrimination claim are separate and distinct. Plaintiff seems to claim that Defendant's failure to accommodate him was both disability discrimination as well as a failure to accommodate the same. That said, if Plaintiff intended to bring disability discrimination as a separate claim, it reasonably should have been pleaded under a different count in the complaint, as was done with the retaliation claim (Count IV) brought under the very same statute. (Doc. 18 at 18–20.) The parties' lack of clarity on this issue is unhelpful to the court's analysis. Nevertheless, in an abundance of caution, the court will briefly address the issue. To the extent Plaintiff brings a claim under the ADA for disability discrimination, it appears clear that Defendant moved for summary judgment on such a claim. (Doc. 58 at 28.) It is unclear what Plaintiff's arguments in support of the claim are. However, the pretrial

### G. ADEA

*1. Age Discrimination (Count V)*

Next, Plaintiff brings an age discrimination claim under the ADEA.  (Doc. 18 at 21.)  To state a claim of age discrimination, Plaintiff must show that he: (1) is a member of the class protected by the ADEA; (2) suffered an adverse employment action; and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination.  *Bennett*, 792 F.3d at 1266.  Age must be the "but-for" cause of the adverse treatment at issue.  *Babb v. Wilkie*, 140 S. Ct. 1168, 1174 (2020) ("[A]ge must be the but-for cause of *differential treatment*, not that age must be a but-for cause of the ultimate decision.") (emphasis in original).

Claims brought under the ADEA resting on circumstantial evidence are evaluated under the *McDonnell Douglas* framework.  *Laul v. Los Alamos Nat'l Lab'ys*, 714 F. App'x 832, 839 (10th Cir. 2017) (same standard for analyzing discrimination cases under Title VII and the ADEA).  An inference of unlawful discrimination can be shown by "a variety of circumstances," ranging from "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus" to "the timing or sequence of events leading to" the employment action.  *Laul*, 714 F. App'x at 836.  Plaintiff carries the initial burden of establishing a prima facie case.  Defendant concedes that Plaintiff has sufficiently proven the first two elements—namely, Plaintiff is a member of a protected class as defined by the ADEA and the adverse action was Plaintiff not

---

order points to the following adverse actions: Defendant's failure to promote him in 2022, issuing written discipline, placing him on a PIP, and ultimately discharging him.  (Doc. 53 at 10.)  *See* D. Kan. R.  16.2(b) (stating that at this stage of the proceeding, the pretrial order controls).  The court has already addressed these same adverse actions under Title VII and the ADEA, and the court cannot locate record evidence that supports the claim that any of these adverse actions occurred because of Plaintiff's disability.  *See Hardwick v. Amsted Ry. Co.*, 929 F. Supp. 2d 1129, 1135 (D. Kan. 2013) ("To make out a prima facie case of disability discrimination under the ADA, plaintiff must show that . . . he suffered discrimination by an employer *because of that disability*.") (emphasis added).  Therefore, to the extent Plaintiff brings a separate claim for disability discrimination, any such argument would fail for the same reasons previously articulated: Defendant identified legitimate, non-discriminatory reasons why it took these adverse actions, and Plaintiff has failed to rebut it with admissible evidence.

being chosen for promotion in 2022.  (Doc. 58 at 28–34.)  Defendant moves for summary judgment

on the basis that Plaintiff cannot establish the third prong—that is, the challenged action does not

give rise to an inference of discrimination.  (*Id.*)  The court agrees.

The only evidence Plaintiff cites that rationally supports his age discrimination claim are

comments made by Cairns after Plaintiff failed to get the 2022 KCMO position and by Dan

Huesman, who stated that Plaintiff was "old school."  (Doc. 70 at 28–29 (citing Huesman's Depo.,

Doc. 70-3 at 17–18.)  Specifically, Plaintiff alleges that Cairns told him "You're old . . . You're

on your way out. They're going to probably pass you over, go with a younger person."  (*Id.* at 29

(quoting Plaintiff's Depo., Doc. 58-2 at 28–29.)[20]  Plaintiff admits he has no other evidence of age

discrimination other than Mr. Divers, who is younger than Plaintiff, being promoted in 2022.  (Doc.

58 at 34.)  These statements fail to constitute sufficient evidence of age discrimination.

These statements are best characterized as stray remarks and are insufficient to create a

jury issue in an ADEA case.  "[A]n isolated or ambiguous comment is insufficient alone to support

an inference of discrimination."  *Kawahara v. Guar. Bank & Tr.*, 835 F. App'x 386, 390 (10th Cir.

2020) (holding "where [defendant] called [plaintiff] an 'old lady'" to be insufficient to support an

age discrimination claim); *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.

---

[20] The court notes several problems with this evidence of what Cairns allegedly said.  First, Plaintiff did not include this comment made by Cairns in any of his EEOC charges or his complaint and only thought of it when asked during his deposition.  Second, after additional questioning, Plaintiff casts doubt on whether this conversation ever took place, stating "[t]he more I think about it, I think [Cairns] might have put it in an email," which is absent from the record. (Plaintiff's Depo., Doc. 58-2 at 29.)  Such evidence is problematic.  Nevertheless, the court must view all evidence in the light most favorable to Plaintiff.  Therefore, the court will proceed as if Cairns did make this statement.

Plaintiff also points to Cairns' deposition where Cairns told Plaintiff what Cairns had allegedly been told by Huesman, which was that Huesman would never promote Cairns because Cairns would promote Plaintiff.  (Doc. 70 at 15.)  This statement is as convoluted as it is problematic—namely, because Plaintiff fails to explain how this comment relates to Plaintiff's ADEA claim.  It appears that Plaintiff wants this court to adopt his subjective understanding that this comment implies that Huesman did not want Plaintiff promoted due to his age.  This the court cannot do.  *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 2005 WL 3682144, at *5 (D. Kan. Nov. 17, 2005), *aff'd on other grounds*, 514 F.3d 1136 (10th Cir. 2008) ("[A]n employee's subjective understanding of a comment cannot alone support an inference of [age] animus.").

1994) (holding comments that the hospital "need[s] some new young blood" and "long-term employees have a diminishing return" were insufficient to create a jury issue in an ADEA case). In the current case, Huseman's comments that Plaintiff is "old school," and Cairn's comments that, in essence, call Plaintiff old and therefore likely to get passed over for promotion are nothing more than isolated and ambiguous remarks, insufficient to create a triable jury issue.

Moreover, "age-related comments by non-decisionmakers are not material in showing the [employer's] action was based on age discrimination." *Cone*, 14 F.3d at 531; *Mapp v. Duckwall-Alco Stores, Inc*., 461 F. App'x 722, 727 (10th Cir. 2012); *Steger v. General Electric Co*., 318 F.3d 1066, 1079 (11th Cir. 2003) ("[S]tatements made by nondecisionmakers or [those] unrelated to the decisional process" do not demonstrate discriminatory intent); *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) (holding that remarks made by an individual who took no part in the hiring interview to be immaterial to the question of age discrimination). Here, it is uncontested that Cairns took no part in the hiring process for the 2022 position, and Huesman "did not personally sit on the interview panel for this position." (Docs. 58 at 34; 70 at 29.) While Plaintiff states that Huesman made a directive not to promote Plaintiff, he points to no evidence to support that assertion. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004) ("Testimony which is grounded on speculation does not suffice to create a genuine issue of material fact.") Accordingly, Huesman and Cairns are best characterized as non-decisionmakers, rendering their comments immaterial when assessing Plaintiff's age discrimination claim. Moreover, these comments are too stray and remote to support an inference of age discrimination.

Therefore, Defendant's motion for summary judgment on Plaintiff's age discrimination claim under the ADEA is granted

    *2.  Retaliation (Count VI)*

Plaintiff has also brought an ADEA retaliation claim.  (Doc. 18 at 22.)  To state a prima facie case, Plaintiff must show (1) he "engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action."  *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (quotation marks and citation omitted).  The ADEA recognizes opposing or complaining about age discrimination by the employer as a protected activity.  *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1278 (10th Cir. 2005).  Defendant moves for summary judgment on the basis that Plaintiff never opposed nor complained about age discrimination to anyone and thus did not engage in protected opposition to it.  (Doc. 58 at 35.)[21]

Here, Defendant argues Plaintiff's ADEA retaliation claim fails because the record is void of evidence showing that Plaintiff ever formally complained about age discrimination to anyone. (Doc. 58 at 35–37.)  Defendant recognizes that opposing or complaining about age discrimination is a protected activity but argues that Plaintiff simply never did.  (*Id*.)  Defendant points to the only complaint Plaintiff made to HR, in May of 2024, which did not contain nor even allude to his age. (Doc. 58-16.)  In response, Plaintiff argues he engaged in a protected activity because, even though it was informal, he told Teri Walsh-Prondzinski in HR and Cairns that the 2022 promotion was only given to Mr. Divers "because he was younger."  (Doc. 70 at 18, 31 (citing Plaintiff's Depo.,

---

[21] It is not clear whether Plaintiff seeks to argue that his filing of a charge of discrimination with the EEOC amounted to protected opposition to discrimination as part of his prima facie ADEA retaliation claim.  (Docs. 70 at 31, 53 at 10.) However, even if Plaintiff did intend to make such an argument, it is insufficient to raise a triable jury issue because there is no record evidence suggesting Defendant was aware that Plaintiff filed this charge.  And because no evidence exists that Defendant knew of the filing; it cannot form the basis for Plaintiff's engagement in protected opposition— precluding its use in establishing a prima facie claim.  *Petersen*, 301 F.3d at 1188 ("An employer's action against an employee cannot be because of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition."); *Lindsay v. Denver Pub. Schs.*, 88 F.4th 1323, 1328 (10th Cir. 2023) (holding that "bare speculation" supporting an employer's knowledge of plaintiff's protected opposition won't suffice).

Doc. 58-2 at 52.)  This single, vague reference to age discrimination is insufficient to show that he engaged in a protected activity.

An employee's "[p]rotected opposition can range from filing formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004).  While "no magic words are required" to establish protected opposition, the Tenth Circuit has made clear that a "vague reference to discrimination and harassment without any indication that this misconduct was motivated by [age] does not constitute protected activity and will not support a retaliation claim." *Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004); *Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1203 (10th Cir. 2008); *see also Boliere v. Robert Brodgen's Olathe Buick-GMC Inc*., 706 F. Supp. 3d 1275, 1295 (D. Kan. 2023) ("[C]omplaints vaguely referencing 'discrimination' or 'harassment' that do not give some indication that the conduct at-issue is unlawful . . . are not enough.").

Here, Plaintiff relies solely on an informal remark made to Ms. Walsh-Prondzinski in which he told her that Divers got the 2022 promotion "because he was younger."  (Doc. 70 at 18, 31 (citing Plaintiff's Depo., Doc. 58-2 at 52.)  Viewing the facts in the light most favorable to Plaintiff, this comment amounts to nothing more than a vague and isolated remark which falls outside the definition of protected opposition.  Courts in this District have held similar statements to be insufficient to put their employers on notice to their protected opposition.  *Rangel v. Sanofi-Aventis U.S., LLC*, 2012 WL 628240, at *5 (D. Kan. Feb. 27, 2012), *aff'd*, 507 F. App'x 786 (10th Cir. 2013) (holding an employee did not engage in protected activity where he never complained in writing of age discrimination but later testified that he orally raised the issue).

Additionally, even if this statement amounts to being protected opposition, Plaintiff's testimony reveals that he made the comment to Ms. Walsh after Divers was informed of the 2022

promotion.  (Plaintiff's Depo., Doc. 58-2 at 52.)  This timing is problematic as the earliest materially adverse employment action taken against Plaintiff was when he was informed that he would be placed on a PIP in May 2024.  (Doc. 58 at 8.)  This gap exceeds a year—effectively precluding a reasonable jury from finding causation.  *See Hinds*, 523 F.3d at 1204 ("[E]leven months [is] a time span too extended to infer retaliatory motive").  This record shows Plaintiff is relying on speculative and conclusory assertions rather than evidence that he ever engaged in a protected activity—whether formally or informally.  Accordingly, Plaintiff has failed to establish his prima facie case.

Even if Plaintiff was able to establish a prima facie case, he cannot establish pretext.  As previously discussed, Defendant offered legitimate, non-discriminatory reasons for placing Plaintiff on the PIP and terminating him: Plaintiff's failure to meet critical performance metrics.  (Docs. 58-2 at 14; 58-3; 58-21.)  And Plaintiff admits that Cairns had approached him multiple times before being placed on a PIP to discuss Plaintiff's performance.  (Plaintiff's Depo., Doc. 58-2 at 26.)  Defendant also offered legitimate, non-discriminatory reasons for promoting Divers over Plaintiff: Divers was more qualified and performed better during the interview process.  (Doc. 58 at 16–22.)  Plaintiff fails to rebut either of these reasons.

Plaintiff appears to argue that these actions were pretext because: (1) he had a long history of receiving good performance reviews, (2) Cairns would not change the schedules of members of Plaintiff's sort, (3) Cairns hired inexperienced staff to work on Plaintiff's sort, (4) and that he was more qualified than Divers.  (Doc. 70 at 8, 16, 32–33, 42.)  As Defendant highlights, these bare assertions provide no evidence that Defendant took any adverse actions or promoted Divers because of Plaintiff's age.  *Forge v. Sisters of Charity of Leavenworth*, 2019 WL 4241130, at *13 (D. Kan. Sept. 6, 2019) ("[T]he fact that [Defendant] hired younger employees cannot establish

age-based animus or show that [Defendant] terminated [P]laintiff on the basis of his age."); *Diskin*, 1996 WL 717328 at *5 ("Plaintiff must show more than a dispute over qualifications to prove pretext") (internal quotations omitted).  Accordingly, Plaintiff has failed to present any evidence suggesting that a primary factor for Defendant's decisions was age.

Therefore, Defendant's motion for summary judgment on Plaintiff's retaliation claim under the ADEA is granted.

### H.  FMLA Interference (Count VII)

Next, Plaintiff brings a claim of FMLA interference, alleging he was denied promotion due taking FMLA leave.  (Doc. 18 at 23.)  Plaintiff must show "(1) that []he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [his] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [his] FMLA rights."  *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).  Defendant moves for summary judgment on the basis that Defendant took no adverse action against Plaintiff because Plaintiff never applied for a job after taking FMLA leave.  (Doc. 58 at 37.)

To satisfy the second element, the employee must show "that [he] was prevented from taking the full 12 weeks . . . of leave guaranteed by the FMLA, denied reinstatement following [FMLA] leave, or denied initial permission to take [FMLA] leave."  *Dalpiaz v. Carbon Cty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014).  "Thus, an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave."  *Id*.  Defendant emphasizes it is uncontested that Plaintiff took FMLA leave from September 14, 2023, to December 10, 2023 (12 weeks), and "experienced no resistance or difficulty from FedEx for taking that leave."  (Doc. 58 at 33; *see* Plaintiff's Depo., Doc. 58-2 at 12, 53.)  It is further undisputed that Plaintiff never applied for a position after taking

FMLA leave. (Docs. 58 at 33; 53 at 2.) Moreover, Plaintiff in his deposition testimony agrees that there were no failures to promote after his FMLA leave. (Doc. 58 at 33–34; Plaintiff's Depo., Doc. 58-2 at 53.) Therefore, Plaintiff cannot establish FMLA interference based on a promotion denial that occurred before he ever exercised his FMLA rights. While Plaintiff appears to have waived his FMLA claim for not substantively addressing it in his response, to the extent he has not, Plaintiff's FMLA claim fails because he was permitted to take FMLA leave, was allowed to take the full 12 weeks, and was not denied reinstatement or promotion for taking leave.

Therefore, Defendant's motion for summary judgment on Plaintiff's FMLA interference claim is granted.

## I. Section 1981 Hostile Work Environment Claim (Count VIII)

Finally, Plaintiff alleges that Defendant subjected him to an "intimidating, hostile and offensive working environment" in violation of 42 U.S.C. § 1981. (Doc. 18 at 24–25.)[22] Defendant argues it is entitled to summary judgment because Plaintiff cannot establish a prima facie case. The court agrees.

Under *McDonnell Douglas*, Plaintiff carries the initial burden of establishing a prima facie case, requiring a showing that (1) he is a member of a protected group, (2) he was subject to unwelcome harassment, (3) the harassment was based on race, and (4) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment and created an abusive work environment. *Owens v. Unified Gov't of Wyandotte Cnty./Kansas City, Kansas*, 2022 WL 2131117, at *14 (D. Kan. June 14, 2022) (citing *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015)). Plaintiff may establish that the harassment altered the terms and conditions

---

[22] Defendant addresses allegations of race discrimination contained in Plaintiff's first amended complaint (Doc. 18) and asserts that they fail to establish a basis for a § 1981 claim. (Doc. 58 at 38–39.) At this stage of the proceeding, the pretrial order controls. D. Kan. R. 16.2(b). According to the pretrial order, Plaintiff's claim of race discrimination under § 1981 is based on hostile work environment. (Doc. 53 at 9–10.)

of his employment via two independent and equal grounds: (1) the pervasiveness of the harassment or (2) the severity of the harassment. *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1143 (10th Cir. 2008); *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998).

Here, Defendant argues Plaintiff has not established the alleged harassment was so pervasive or severe that it altered the terms and conditions of his employment. (Doc. 58 at 38.) Namely, Defendant points to Plaintiff's own testimony where Plaintiff admits that he does "[n]ot . . . know of" any instances at Defendant's workplace where he was subjected to physically or verbally hostile or abusive conduct. (Doc. 58 at 39 (citing Plaintiff's Depo., Doc. 58-2 at 54).) In response, Plaintiff does not address this alleged hostile work environment claim. Thus, Plaintiff appears to have abandoned it. *See McCants*, 2018 WL 2445157 at *5 ("[W]hen a party fails to respond to arguments made to support a motion for summary judgment, the party, in effect, abandons that claim."). To the extent he has not, Plaintiff wholly fails to provide facts supporting the existence of workplace harassment, and moreover, if there was such harassment, Plaintiff does not provide record evidence that it was based on his race. Thus, the court finds that Plaintiff has not shown a genuine issue of material fact with regard to his hostile work environment claim.[23]

Therefore, Defendant's motion for summary judgment on Plaintiff's hostile work environment claim under § 1981 is granted.

## IV.    Conclusion

THEREFORE, Defendant's motion for summary judgment (Doc. 57) is GRANTED; Plaintiff's motion for spoliation (Doc. 59) sanctions is DENIED; and Plaintiff's motion to strike or, in the alternative, for leave to file a limited surreply (Doc. 72) is DENIED.

---

[23] To the extent Plaintiff brings a hostile work environment claim under Title VII, it fails for the same reasons.

FURTHER, because the parties stipulated that FedEx Corporation is now the only properly named defendant for purposes of liability, the Clerk is DIRECTED TO TERMINATE FedEx Ground Package System, Inc. as a defendant.

IT IS SO ORDERED.  Dated this 27th day of January, 2026.

       _s/ John W. Broomes_____
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE